UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Keyontay Ricks,

                              Plaintiff,

        v.

Thomas Brown *et al.*,

                              Defendants.

**Report and Recommendation**

20-CV-43 (LJV)

## I.   INTRODUCTION

On June 28, 2004, plaintiff Keyontay Ricks was arrested with several others in connection with an armed robbery that had been reported to police.  Following a trial, plaintiff was convicted of first-degree robbery under New York Penal Law ("Penal Law") § 155.35 and third-degree criminal possession of stolen property under Penal Law 165.30.  On October 27, 2005, plaintiff was given a determinate sentence of 20 years for the robbery conviction and an indeterminate sentence of 3-1/2 to seven years for the stolen-property conviction.  Years later, in 2017, the robbery conviction was vacated.  Plaintiff in state court sued several defendants who worked on his arrest or prosecution, including the three defendants here—Thomas Brown ("Brown"), Chris Dates, and Mark Joseph Lauber.  Upon defense motion to dismiss, a judge in state court found that plaintiff's conviction at trial substantively established a presumption of probable cause, meaning that his claims for false arrest, false imprisonment, and malicious prosecution had to be dismissed.

Plaintiff now has filed a complaint in this District alleging malicious prosecution, due-process violations, false imprisonment, and excessive detention, all by way of 42 U.S.C. § 1983.  All of the allegations rest on an assertion that Brown and others lacked probable cause to arrest and to prosecute plaintiff.  In response, Brown has filed a motion to dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  (Dkt. No. 7.)  The sole argument that Brown advances concerns

the state-court determination.  Brown considers the state-court order of August 2, 2018 to be a final

order and judgment that came after the same parties present here fully litigated the issue of probable

cause and the claims of false arrest, false imprisonment, and malicious prosecution.  By that logic,

according to Brown, res judicata now applies and prohibits plaintiff from revisiting the issues and

claims that he litigated once before.  Plaintiff argues that res judicata does not apply because the

state-court judge addressed only a procedural defect with his complaint, a defect that he believes that

he has corrected with his complaint here.

      The Court has deemed Brown's motion submitted on papers under Rule 78(b).  For the

reasons below, the Court respectfully recommends granting the motion.

## II.    BACKGROUND

      This case concerns the potential implications of a 2005 robbery conviction that was vacated

nearly a dozen years later.  The robbery in question occurred on June 28, 2004 just shy of 10:00 AM,

at a Rent-A-Center store at 3041 Bailey Avenue in Buffalo, New York.  Brown, the responding

officer from Amherst Police, placed the following remarks in his police report concerning the events

of the robbery (abbreviations and typographical errors in original, paragraph breaks added):

> REMARKS: While on routine patrol an attempt to locate was given out for
> NY Reg# BVR4931 for an Armed Robbery that had just occurred at 3041 Bailey
> Ave. in Buffalo.  Shortly thereafter R/O spotted said vehicle northbound on
> Sweethome Rd in the vicinity of Heritage Heights Elementary School.  R/O began
> following the vehicle waiting for backup as it continued north on Sweethome to
> westbound Pheasant Run.  As the vehicle turned into the driveway at 30 Pheasant
> Run backup arrived and a felony stop was performed.  All four suspects were taken
> into custody without incident.  Suspect Smith was seated in the drivers seat, suspect
> Borina was in the front passenger seat, suspect Ricks was in the backseat on the
> drivers side and suspect Walker was in the back seat on the passenger side.  All
> suspects were then placed in separate cars.
>
> Marina Borina consented to a search of her vehicle and signed a search and
> seizure waiver filled out by Det Sgt. Brown.  During the search of the vehicle the

listed marijuana, cell phones, and Travel Lodge room key were confiscated and a receipt for same was filled out and a copy of the original was given to suspect Borina.  All four suspects were then transported to 3041 Bailey Ave. at which time suspect Walker was positively identified as the perpetrator of the Robbery.  R/O confronted suspect Walker of him being positively Identified and Walker admitted to having the two checks, the two black plastic bags and the two rent a center currency receipts in his right shoe, at the same time he stated suspect Ricks had the cash in his shoes.  R/O took custody of Walkers Shoe and then went to search Ricks shoe.

Ricks was then pulled out of patrol car 107, which R/O searched at the start of tour and no one was in during, and the listed $3,488.00 cash was found shoved under the rear seat.  Det Sgt Brown took pictures and then the cash was removed and counted.  R/O then took custody of the evidence.  Information was then learned from Suspect Smith that the suspects were staying in room #216 at the Travel Lodge.  Lt. Walter and Ptlm Felgamacher were relayed the information and began a heavy check of the room until Buffalo Detectives Torre and Lauber responded.  The room was then searched with negative results.

All suspects were transported downtown to Buffalo PD Major Case Squad. R/O and Ptlm Moore verified the cash amount.  Suspects and all evidence except the marijuana were turned over to Det Lauber.  Transfer of evidence receipt for evidence found on suspects Walker and Ricks was signed by R/O and Det Lauber. At which point R/O returned to HQ for paperwork and to tag the listed evidence.

(Dkt. No. 7-2 at 25.)  Following a trial, plaintiff was convicted of first-degree robbery under Penal

Law § 155.35 and third-degree criminal possession of stolen property under Penal Law 165.30.  On

October 27, 2005, plaintiff was given a determinate sentence of 20 years for the robbery conviction

and an indeterminate sentence of 3-1/2 to seven years for the stolen-property conviction.  Plaintiff

challenged his convictions on direct appeal, but a state appellate court affirmed them.  *People v. Ricks*,

856 N.Y.S.2d 346 (N.Y. App. Div. 2008).  Plaintiff later made a collateral attack on his convictions

by filing a motion to vacate under New York Criminal Procedure Law § 440.10.  Plaintiff's collateral

attack largely succeeded: On January 30, 2017, his motion to vacate was granted in part to vacate the

robbery conviction.  (Dkt. No. 7-4 at 6.)  With his time served on the robbery conviction having

exceeded the maximum possible sentence for the stolen-property conviction, plaintiff was released.

3

Following release, plaintiff began to pursue civil remedies for what he considered a wrongful conviction for robbery. Plaintiff commenced suit in state court in January 2018 against every defendant here plus several others. (Dkt. No. 7-2 at 28.) In the complaint, plaintiff advanced his theory that the defendants knew or should have known that the robbery in question never happened—*i.e.*, that the robbery was staged to give a Rent-A-Center employee an excuse to steal funds from his employer. Plaintiff accused all the defendants of negligence in hiring; false arrest; false imprisonment; and malicious prosecution. On July 2, 2018, following defense motions to dismiss, the presiding judge in state court dismissed plaintiff's complaint in its entirety. (Dkt. No. 7-4 at 7.) The state-court judge decided that the claims for malicious prosecution and false arrest had to be dismissed because they required, among other elements, an absence of probable cause. Under state law, the judge reasoned, a conviction after a jury trial presumes probable cause. (*Id.*) The state case ended with a final order and judgment dated August 2, 2018. (*Id.* at 1–3.) The record contains no information suggesting that plaintiff appealed the final order and judgment, and neither can the Court find any information in Westlaw, LexisNexis, or the New York Courts website indicating that plaintiff ever filed an appeal.

Plaintiff commenced this case by filing his complaint on January 10, 2020. (Dkt. No. 1.) In the complaint, plaintiff elaborated on his theory of a fabricated robbery. "Unbeknownst to Plaintiff, Degraffenried and Walker, planned a scheme, in which Degraffenried and Walker would stage a robbery, while Degraffenried was making his customary bank deposit of the Rent A Center's funds. Pursuant to the aforementioned scheme, Degraffenried would hand Walker the Rent A Center's funds, and pretend to have been robbed, and Walker would take funds that he was owed and he and Degraffenried, would split the balance of the funds." (*Id.* at 4.) Plaintiff also suggested a racially hostile history between him and Brown and accused Brown of having a personal animus against

him.  (*Id.* at 5.)  The complaint contained three counts.  In Count I, plaintiff accused defendants of malicious prosecution and due-process violations.  Plaintiff included in Count I allegations of fabrication of evidence, suppression of exculpatory information, and coercion of statements from witnesses.  In Count II, plaintiff accused defendants of false imprisonment and excessive detention.  According to plaintiff, "[t]he aforesaid acts of concealment, fabrication and failure to make a full and complete statement of the facts as to how Plaintiff became implicated and identified as a perpetrator of criminal activity, for which he was actually innocent, and the aforesaid acts by defendants caused Plaintiff to suffer excessive incarceration and detention in violation of his rights not to be subjected to prolonged detention."  (*Id.* at 20.)  In Count III, plaintiff made a demand for attorney fees and costs under 42 U.S.C. § 1988.

Brown filed the pending motion on February 24, 2020.  Brown seeks dismissal on the basis of res judicata stemming from plaintiff's previous case in state court.  According to Brown, the state case involved the same parties and the same issues—or, at a minimum, issues that could have been raised in state court because they arose from the same factual events.  The parties in the state case litigated the issues fully, in Brown's view, and the state case ended with a final judgment.  Plaintiff disagrees that the dismissal of the state case constitutes a fully litigated final judgment for res judicata purposes:

> The basis of the Defendant's motion to dismiss the state action was C.P.L.R. § 3211(a)(7) and the state court expressly granted the motion, for failure to state a cause of action, pursuant to C.P.L.R. § 3211(a)(7).  It is well settled that a dismissal under C.P.L.R. § 3211(a)(7) is not a final determination on the merits under New York law, and an order dismissing a complaint under that section for failing to state a cause of action may not bar a subsequent claim based on the doctrine of collateral estoppel or res judicata.  *Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C.*, 41 A.D.3d 584, 585, 837 N.Y.S.2d 333 (2 Dep't 2007); *FC Notes SVC, LLC v United Gen. Tit. Ins. Co.*, 146 A.D.3d 935 (2 Dep't 2017).  Where a complaint is dismissed because it was insufficiently pleaded, that is not a dismissal on the merits which bars the claim from being asserted in a new action, which is properly pleaded.  *Viafax Corp. v. Citicorp Leasing, Inc.*, 54 A.D.3d 846, 849 (2 Dep't 2018).  In *Tortura*, 41

A.D.3d at 585, the Court held that contrary to the defendant's contention, the later action was not barred by the doctrines of res judicata or collateral estoppel since the dismissal of the prior action did not involve a determination on the merits and therefore the issues were not actually litigated therein, citing *Asgahar v Tringali Realty, Inc.*, 18 AD3d 408, 795 NYS2d 68 (2005); *Matter of Halyalkar v Board or Regents of State of N.Y.*, 72 NY2d 261,268, 532 NYS2d 85 [1988]; *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457, 492 NYS2d 584 [1985], citing Restatement [Second] of Judgments § 27.  In *FC Notes SVC, LLC v United Gen. Tit. Ins. Co.*, 146 A.D.3d 935, 936 (2d Dep't 2017), the Court held that a subsequent action was not barred because the dismissal of the prior action for failure to state a cause of action, did not involve a determination on the merits.

Here, the state court action was dismissed based upon a pleading deficiency, i.e., the complaint did not state a cause of action.  In particular, the Court found that Plaintiff did not plead a lack of probable cause or plead facts that would rebut the presumption created by the conviction.  As such, the dismissal was based upon Plaintiff's failure to plead facts, which established a lack of probable cause and rebutted the presumption of probable cause.  Therefore, there was no determination of the merits of the underlying cause of action, nor was there any matter that was actually litigated and determined in the prior state action.  This conclusion is reinforced by the fact that Defendant did not move for summary judgment pursuant to C.P.L.R. § 3212, nor was the motion converted to a summary judgment motion. Therefore, the dismissal was plainly for a pleading deficiency, i.e., a failure to state a cause of action, but it was not a determination on the merits that Plaintiff did not have a cause of action.  As discussed in point II, infra, the instant complaint adequately pleads a lack of probable cause for malicious prosecution purposes and addresses the rebuttal of the presumption of probable cause associated with the conviction.

(Dkt. No. 10 at 15–16.)

## III.   DISCUSSION

### A.  *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short

of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

### B. *Res Judicata and the State Court Proceedings*

Reviewing Brown's motion requires examining the doctrine of res judicata, which blurs somewhat with the related concept of collateral estoppel under New York's transactional approach. "When determining the effect of a state court judgment, federal courts are required to apply the preclusion law of the rendering state." *Harris v. Beth Israel Med. Ctr.*, 367 F. App'x 184, 185 (2d Cir. 2010) (summary order) (internal quotation and editorial marks and citation omitted). "The doctrine of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. Under New York's transactional approach to the rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007) (internal quotation marks and citations omitted). Here, all of the parties appearing in this case litigated in

7

state court over the same factual events—namely, the events of June 28, 2004 and the vacation of

plaintiff's conviction for robbery.  The state court granted the defense motion to dismiss and stated

explicitly that "[t]he complaint must be dismissed on the merits."  (Dkt. No. 7-4 at 7.)  Specifically,

the state court dismissed plaintiff's complaint against all the defendants here, not because of any

procedural defect, but because of the substantive problem that "it has long been the rule in New

York that a conviction after a jury trial presumes probable cause and defeats the claim for malicious

prosecution.  A conviction remained after the determination on plaintiff's 440 motion.  Plaintiff's

claim of malicious prosecution and by necessity of false arrest against the Town of Amherst, must

therefore be dismissed."  (*Id.*)  The state court's substantive determination was reduced to a final

order and judgment on August 2, 2018.  *See Vavolizza v. Krieger*, 308 N.E.2d 439, 442 (N.Y. 1974)

("There is, moreover, cogent precedent for the proposition that an order made upon a motion

provides such a 'judgment' as will bar relitigation under the doctrines of Res judicata or collateral

estoppel so long as the requisites of identity of issue and opportunity to contest are present.")

(citations omitted); *see also Strange v. Montefiore Hosp. & Med. Ctr.*, 450 N.E.2d 235, 236 (N.Y. 1983)

("CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in

order to be given *res judicata* effect; it suffices that it appears from the judgment that the dismissal

was on the merits.").  To the extent that plaintiff did not ever appeal the final order from state court,

the failure to appeal provides an additional reason to believe in the finality of the August 2, 2018

order and judgment.  *See Dick v. City of New York*, 783 N.Y.S.2d 4, 5 (N.Y. App. Div. 2004) (finality

from failure to appeal or to file an amended complaint); *Kelley C. ex rel. Serina C. v. Kim M.*, 718

N.Y.S.2d 552, 553 (N.Y. App. Div. 2000) ("Petitioner never appealed from the prior order, and thus

res judicata bars these proceedings.").

With the claims of false arrest and malicious prosecution, and the issue of probable cause, thus having been fully litigated, res judicata and collateral estoppel apply here for those same claims and issues.  Count I of plaintiff's complaint here explicitly charges malicious prosecution and explicitly alleges a lack of "probable cause to believe that the prosecution against the Plaintiff could succeed." (Dkt. No. 1 at 12.)  Count II of plaintiff's complaint here is titled false imprisonment, not false arrest, but the count rests entirely on plaintiff's allegation that he was "incarcerated and confined without probable cause and without justification or privilege." (*Id.* at 20.)  Both of those counts must fail, meaning that Count III for attorney fees and costs would fail as well.

The major cases that plaintiff has cited do not change the above analysis.  The dismissal in *Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C.*, 837 N.Y.S.2d 333, 334 (N.Y. App. Div. 2007), occurred because "the cause of action alleging legal malpractice was not pleaded with the requisite specificity."  A procedural lack of specificity, which an amended complaint can correct, differs from a substantive presumption of probable cause, which an amended complaint cannot.  Similarly, collateral estoppel did not apply in *FC Notes SVC, LLC v. United Gen. Title Ins. Co.*, 46 N.Y.S.3d 159, 160 (N.Y. App. Div. 2017), because the plaintiff in the first case committed the procedural error of failing to allege that it was the holder of certain mortgage notes.  The state court in that first action did not determine substantively that the plaintiff in fact was not the holder of the notes.  Plaintiff's other cases are similarly unpersuasive.

The only other issue to consider briefly is what will remain of this case upon adoption of this Report and Recommendation by Judge Vilardo.  Although res judicata arguably would apply all three defendants here, only Brown filed a motion to dismiss.  Only Brown, therefore, would be terminated from the case; subject to further proceedings, the other two defendants would remain.  Additionally, this Report and Recommendation, if adopted, should not be construed to prohibit

plaintiff from moving to amend the complaint in some way that avoids problems with res judicata or collateral estoppel. If plaintiff wants to amend his complaint then he will have to seek leave under Rule 15.

## IV.   CONCLUSION

In state court, plaintiff accused Brown, among others, of lacking probable cause and creating a situation of false arrest, false imprisonment, and malicious prosecution. The state-court judge determined on the merits that plaintiff's conviction at trial created a definitive presumption of probable cause, regardless of whether another judge determined later that the robbery charge lacked certainty beyond a reasonable doubt. Any of plaintiff's claims requiring an absence of probable cause thus definitively failed. Out of respect for the state-court judgment and for the sake of finality of litigation, this Court will not revisit what the parties already have litigated fully.

For all of the above reasons, the Court respectfully recommends granting Brown's motion to dismiss. (Dkt. No. 7.)

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's

10

report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice."  *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

 "Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal."  *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted); *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.  In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.") (citation omitted).

 SO ORDERED.

____/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 10, 2020

11