UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEYONTAY RICKS,

        Plaintiff,

v.

THOMAS BROWN, *et al.*,

        Defendants.

20-CV-43-LJV
DECISION & ORDER

---

On January 10, 2020, the plaintiff, Keyontay Ricks, commenced this action under 42 U.S.C. § 1983 against three defendants: City of Buffalo Police Officers Chris Dates and Mark Joseph Lauber and Town of Amherst Police Officer Thomas Brown.  Docket Item 1.  He asserts claims for malicious prosecution and violations of his right to due process arising from a 2005 conviction for first-degree robbery and third-degree criminal possession of stolen property.[1]  *Id.*  In 2017, Ricks's robbery conviction was vacated in a state collateral proceeding.  *Id.*  The next year, he sued several defendants—including the defendants in this action—in New York State Supreme Court, Erie County.  *See* Docket Item 23-3.  After the state court dismissed some of his claims, Ricks filed this case asserting similar claims under section 1983.  Docket Item 1.

---

[1] Although the complaint also assets a claim for false imprisonment, *see* Docket Item 1 at ¶¶ 156-63, it seems that Ricks has abandoned or withdrawn that claim, *see* Docket Item 48 at 8 ("Plaintiff asserts causes of action for malicious prosecution, as well as [d]ue [p]rocess violations, pursuant to 42 U.S.C. § 1983.  Plaintiff[,] however[,] does not assert a false arrest claim."); *see also Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment." (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473, 285 N.E.2d 871, 877 (1972))).  Ricks's false imprisonment claim therefore is dismissed as withdrawn.

This Court already has dismissed Ricks's claims against Brown, *see* Docket Item 19, and denied a motion for judgment on the pleadings brought by Dates and Lauber, *see* Docket Item 41. After Dates and Lauber again moved for judgment on the pleadings on different legal theories,[2] Docket Item 46, Ricks responded, Docket Item 48, and Dates and Lauber replied, Docket Item 49.

For the reasons that follow, Dates's and Lauber's motion for judgment on the pleadings is granted in part and denied in part. More specifically, the motion is granted as to Ricks's malicious prosecution and due process claims related to his stolen property conviction but denied as to those claims with respect to his robbery conviction. The motion also is granted as to count three (attorney's fees), and Ricks's claim for attorney's fees and costs is deemed to be part of Ricks's request for relief.

## **FACTUAL BACKGROUND**[3]

In the summer of 2004, Ricks was unwittingly entangled in a staged robbery planned by his family friend, Kurtel Walker, and a Buffalo Rent-A-Center employee who

---

[2] Dates and Lauber characterize their filing as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see* Docket Item 46, but the motion is construed properly as a motion for judgment on the pleadings under Rule 12(c) because they already have answered the complaint, *see* Docket Item 13. Because a motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed[, ]but early enough not to delay trial," Fed. R. Civ. P. 12(c), the Court rejects Ricks's argument that the motion is untimely, *see* Docket Item 48 at 9.

[3] The following facts are taken from the complaint, Docket Item 1, and the state court filings that the parties have submitted. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (citation and internal quotation marks omitted)). The facts alleged in the complaint are accepted

owed Walker money, Antwyninas Degraffenried. Docket Item 1 at ¶¶ 28-34, 38, 42. The plan was to stage a robbery "while Degraffenried was making his customary bank deposit of the Rent[-]A[-]Center's funds," *id.* at ¶ 33: Degraffenried would "hand" Walker the money "and pretend to have been robbed," *id.* at ¶ 34. Walker would then keep some of the money to cover Degraffenried's debt, and the two would split the rest. *Id*.

On June 28, 2004, Walker and Degraffenried put the plan into action. *Id.* at ¶¶ 38, 42. Ricks, who was unaware of the plan, accompanied Walker to the scene of the staged robbery. *Id.* at ¶¶ 35-38, 43. As a result of his unknowing participation, Ricks was taken into custody and ultimately charged in a criminal complaint signed by Dates. *Id.* at ¶ 93.

But Ricks's being in the wrong place at the wrong time was not the only reason he found himself in trouble: During their investigation, Dates and Lauber, the Buffalo police officers on the case, *see id.* at ¶¶ 63, 65, engaged in misconduct that led to Ricks's being falsely charged, *see, e.g.*, *id.* at ¶¶ 75, 77, 79. That misconduct included, among other things, physically assaulting Walker and threatening him with prison time unless he "implicate[d] [Ricks] in being involved in the robbery," *id.* at ¶ 75; failing to record Walker's initial statement, which included the admission that Ricks "was not aware of" the planned staged robbery, *id.* at ¶¶ 76-77; "coach[ing Walker] to sign a fabricated statement" suggesting that Ricks had significant involvement in the planned staged robbery, *id.* at ¶ 78; and threatening Walker with arrest when he said that he wanted to recant his fabricated statement, *id.* at ¶¶ 86-87. Additionally, Lauber and

---

as true and viewed in the light most favorable to Ricks. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

3

Dates "had Walker sign [a] fabricated statement" indicating that the stolen money was found in Ricks's transport vehicle "even though they knew the money was actually found in Walker's transport vehicle." *Id.* at ¶ 80.

On December 8, 2004, Ricks was indicted for first-degree robbery, grand larceny, and third-degree possession of stolen property. *Id.* at ¶ 113. In 2005, he was tried in New York State Supreme Court, Erie County, and convicted of first-degree robbery and third-degree possession of stolen property.[4] *Id.* at ¶¶ 117, 122. He was given concurrent sentences of twenty years' imprisonment on the robbery charge and two-and-one-third to seven years' imprisonment on the stolen property charge. *Id.* at ¶ 126.

A little more than twelve years later, on January 30, 2017, Ricks's robbery conviction was vacated in a state collateral proceeding. *Id.* at ¶ 136. The state court did not, however, vacate Ricks's conviction for possession of stolen property. *Id.* at ¶ 137. A few days later, Ricks—who at that point had been incarcerated for far longer than the sentence imposed for the stolen property conviction—was released from prison. *Id.* at ¶ 138.

About a year after that, Ricks filed suit in New York State Supreme Court, Erie County, bringing negligence, false arrest, false imprisonment, and malicious prosecution claims. Docket Item 23-3. He named various municipalities and municipal employees as defendants, including the three defendants in this case. *Id.*

Brown and the Town of Amherst moved to dismiss the complaint against them under N.Y. C.P.L.R. § 3211 on several grounds, including timeliness and failure to state a cause of action. *See* Docket Item 15-4. As to Ricks's failure to state a cause of

---

[4] The trial court dismissal the grand larceny charge. Docket Item 1 at ¶ 118.

4

action, Brown argued (1) that Ricks's malicious prosecution claim failed because Ricks had not alleged favorable termination, an essential element of a malicious prosecution claim; and (2) that Ricks's false arrest and false imprisonment claims failed because his arrest was supported by probable cause, as evidenced by his stolen property conviction. *See id.* (citing, *inter alia*, *Broughton v. New York*, 37 N.Y.2d 451, 335 N.E.2d 310 (1975)).[5]

On July 2, 2018, New York State Supreme Court Justice John F. O'Donnell issued a written decision on Brown's and Amherst's motions.[6] Justice O'Donnell rejected the timeliness argument but nevertheless concluded that "[t]he complaint must be dismissed on the merits." Docket Item 23-4 at 6-7.[7] He determined that Ricks's malicious prosecution claim was not viable because Ricks "ha[d] failed to plead" that "there was no probable cause for the criminal proceeding." *Id.* at 7. Justice O'Donnell further concluded that Ricks's malicious prosecution and false arrest claims "must . . . be dismissed" because "[a] conviction remained after the determination" of Ricks's

---

[5] In *Broughton*, the New York Court of Appeals explained that when an individual is arrested without a warrant,

> evidence of a subsequent arraignment or indictment is admissible as some proof of the presence of probable cause. Moreover, a conviction which survives appeal would be conclusive evidence of probable cause. On the other hand, evidence of a subsequent dismissal, acquittal[,] or reversal on appeal would also be admissible to refute the affirmative defense of justification.

37 N.Y.2d at 458, 335 N.E.2d at 315.

[6] Justice O'Donnell also granted Erie County's and Assistant Erie County District Attorney Michael McHale's motions to dismiss. Docket Item 23-4.

[7] Page numbers in docket citations refer to ECF pagination.

5

collateral appeal and "it has long been the rule in New York that a conviction after a jury trial presumes probable cause and defeats a claim for malicious prosecution." *Id.*

Justice O'Donnell concluded that "the defense motions are granted and the complaint against them dismissed." *Id.* He subsequently issued a separate order in which he "ordered, adjudged and decreed[] that the summons and complaint of the plaintiff, Keyontay Ricks, is hereby dismissed in entirety with respect to the defendants, Town of Amherst, Officer Thomas Brown, County of Erie[,] and A.D.A. Michael McHale, along with all cross-claims against these defendants." *Id.* at 1-3 (some capitalization omitted).

After Justice O'Donnell issued that order, nothing else of substance happened in the state case. The case docket reflects that a notice of appeal was filed but then was "returned for correction." Docket Item 23-5 at 2 (capitalization omitted). The case is marked as "disposed" on the New York State Courts Electronic Filing system. *Id.* at 1.

## **PROCEDURAL BACKGROUND**

After Ricks commenced this action, Brown moved to dismiss the claims against him on the ground that they were barred by res judicata—also called claim preclusion. Docket Item 7. The Court granted that motion, finding that the malicious prosecution and false imprisonment claims against Brown were barred because Justice O'Donnell had dismissed those claims "on the merits." Docket Item 19 at 7-9. The Court also found that the due process claim against Brown was barred because it "could have been raised" in the state court proceeding. *Id.* at 9-10 (emphasis omitted) (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010)).

6

Dates and Lauber then moved for judgment on the pleadings, arguing that the claims against them likewise were barred by res judicata.  Docket Item 23.  This Court denied that motion because Justice O'Donnell had dismissed Ricks's claims only with respect to the Town of Amherst, Brown, Erie County, and Erie County Assistant District Attorney Michael McHale—not Dates and Lauber—and because Dates and Lauber had not "established that they [we]re in privity with Brown."  Docket Item 41 at 10-11.

Dates and Lauber now move for judgment on the pleadings on two different theories: (1) that the claims against them are barred by collateral estoppel and (2) that Ricks's claims are barred by the final termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  Docket Item 46.  The parties briefed that motion as noted above.

## **LEGAL PRINCIPLES**

The standard for deciding a Rule 12(c) motion is "the same standard [that applies] to dismissals pursuant to Rule 12(b)(6)."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (alterations and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

7

**DISCUSSION**

I.   **COLLATERAL ESTOPPEL**

As noted above, this Court previously found that res judicata barred Ricks from raising his malicious prosecution claim against Brown.[8]  *See generally* Docket Item 19.  The Court found, however, that res judicata did not bar Ricks's malicious prosecution claims against Dates and Lauber.  *See generally* Docket Item 41.  The question the Court now must answer is whether the separate doctrine of collateral estoppel bars the claims against those two defendants.

"Collateral estoppel, or issue preclusion, prevents parties . . . from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).  It applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Id.* at 288-89 (citation and internal quotation marks omitted).  "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue."  *Kosakow v.*

---

[8] Res judicata—or claim preclusion—"holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Bank of N.Y.*, 607 F.3d at 918 (2d Cir. 2010) (quoting *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).  The res judicata bar extends to "all . . . claims arising out of the same transaction or series of transactions . . . , even if based upon different legal theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159 (1981) (citation omitted).

8

*New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (citation omitted).

"Collateral estoppel is a flexible, equitable doctrine that requires a case-by-case analysis of the facts and realities of a particular litigation[] and should not be rigidly or mechanically applied." *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 461, 471 (W.D.N.Y. 2013) (alteration, citation, and internal quotation marks omitted). Accordingly, "[d]istrict courts have broad discretion to determine when collateral estoppel should be applied." *Frydman v. Akerman*, 280 F. Supp. 3d 418, 423 (S.D.N.Y. 2017) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

Dates and Lauber argue that Ricks's malicious prosecution claim fails due to collateral estoppel with respect to a key issue: probable cause. Docket Item 46 at 6-9. They say that probable cause is a complete defense to a malicious prosecution claim and that "conviction of one charge stemming from [the incident leading to a plaintiff's arrest] necessarily establishes probable cause for both that arrest and the ensuing prosecution." *Id.* at 8 (quoting *Corsini v. Brodsky*, 731 F. App'x 15, 18 (2d Cir. 2018)). And, they argue, Justice O'Donnell already decided the issue of whether Ricks's arrest and prosecution were supported by probable cause. *Id.* at 9.

Ricks responds that his malicious prosecution claim is not collaterally estopped. Docket Item 48 at 9-27. For the reasons that follow, this Court agrees with him.

As Dates and Lauber observe, this Court previously rejected Ricks's contention that Justice O'Donnell's dismissal of Ricks's complaint against Brown was not on the merits. *See* Docket Item 49 at 1 (citing Docket Item 19 at 8). But that is a question different than whether Ricks had "a full and fair opportunity to litigate the issue" in state

9

court.  *See Marvel Characters*, 310 F.3d at 288-89.  "Unlike res judicata, collateral estoppel does not bar a litigant from subsequently pursuing issues that were not raised in the first proceeding, but 'could have been.'"  *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999) (quoting *Leather v. Eyck,* 180 F.3d 420, 426 (2d Cir.1999)).  In other words, a finding on the merits that precludes federal litigation of a claim under res judicata does not necessarily do the same under collateral estoppel.

The Second Circuit's decision in *Flaherty* is instructive.  *See* 199 F.3d at 615-16.  There, the court found that collateral estopped did not bar the plaintiff's retaliation claims because the "[d]efendants ha[d] not met their burden of showing that [the plaintiff had] enjoyed a full and fair opportunity to litigate his retaliation claims in the course of the [prior] action."  *Id.* at 615.  Even though in "granting summary judgment to [the] defendants and denying leave to file a supplemental complaint, the [d]istrict [c]ourt [had] concluded that the retaliation claims were unfounded[,] . . . the basis of the [c]ourt's conclusion on the retaliation claims [wa]s not readily apparent."  *Id.*  The district judge had made several "passing statements" about the retaliation claim during a conference, but "nothing in the record ha[d] been brought to [the Second Circuit's] attention to indicate that [the plaintiff] had a full and fair opportunity to litigate his [retaliation] allegation."  *Id.*  Thus, the court could not "conclude that [the plaintiff]'s retaliation claims [we]re barred by collateral estoppel."  *Id.* at 616.

So, too, here.  As Ricks notes, his state court malicious prosecution claim "asserted damages for 13 years of incarceration" and did not distinguish between the time Ricks served for the stolen property conviction—which has not been reversed— and the now-vacated robbery conviction.  Docket Item 48 at 12-13; *see* Docket Item 23-

3 at ¶ 53 ("As a result of this malicious prosecution[,] . . . Ricks spent almost thirteen (13) years in prison for a crime which all the . . . [d]efendants knew . . . had never taken place."). As a result, Justice O'Donnell did not separately analyze whether probable cause existed as to both the robbery charge and the stolen property charge. Instead, Justice O'Donnell determined that Ricks "failed to plead" that "there was no probable cause for [his] criminal proceeding" as a whole. Docket Item 23-4 at 7. Thus, it does not appear that Ricks had a full and fair opportunity to litigate the issue of whether his stolen property conviction barred his claim for malicious prosecution on the robbery charge.[9] And collateral estoppel therefore is not appropriate.[10]

Moreover, this Court agrees with Ricks that "application of the [collateral estoppel] doctrine will result in manifest injustice." See Docket Item 48 at 15. Ricks "spent six years in prison[] for a crime that he didn't commit and which never actually occurred," but "no trier of fact has ever determined whether the defendants fabricated evidence and withheld exculpatory evidence, which would establish a malicious prosecution case and [d]ue [p]rocess violations." Id. As explained above, district courts have broad discretion in determining whether to apply collateral estoppel to a particular case. See Frydman v. Akerman, 280 F. Supp. 3d at 423. In this Court's view, it would

---

[9] Dates and Lauber note that Ricks "opposed Brown's motion to dismiss and appeared at oral argument in state court." Docket Item 49 at 2. But as in Flaherty, there is no indication that the viability of the malicious prosecution claim regarding the *robbery* charge was briefed or argued.

[10] Because this Court finds that Ricks did not have a full and fair opportunity to litigate the issue, it need not decide whether the other three collateral estoppel factors have been met.

11

fly in the face of the equitable principles that underly the collateral estoppel doctrine to apply that doctrine here.

For all those reasons, this Court declines to apply the doctrine of collateral estoppel.

II. *HECK*

Dates and Lauber also argue that Ricks's claims are barred by *Heck*. *See* Docket Item 46 at 9-12.  In *Heck*, the United States Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under [section] 1983.

*Id.* at 486-87 (footnote omitted).  A plaintiff "need not prove that *any* conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action."  *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014)  (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)).  In other words, if the plaintiff's success on a claim would necessarily imply the invalidity of a conviction or sentence that has not been set aside, that claim must be dismissed.

### A.   Claims Related to the Stolen Property Conviction

As Lauber and Dates observe, there are allegations of fabricated evidence and other malfeasance in the complaint that relate to the stolen property conviction.  *See* Docket Item 46 at ¶¶ 37-38.  For example, Ricks alleges that Lauber and Dates "had

12

Walker sign [a] fabricated statement, even though they knew the money was actually found in Walker's transport vehicle, not the transport vehicle which [Ricks] occupied." Docket Item 1 at ¶ 80.

Claims based on allegations that would invalidate the stolen property charge clearly are barred by *Heck*. Thus, to the extent Ricks asserts claims based on evidence related to the stolen property conviction, those claims may not proceed. But this Court does not think that the presence of such allegations warrants dismissal of the entire complaint for the reasons that follow.

### B. Malicious Prosecution

"Malicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused." *Poventud*, 750 F.3d at 130 (citation and internal quotation marks omitted). "In the context of [section] 1983 malicious prosecution cases, *Heck*'s bar is coextensive with the favorable termination requirement." *Id.* at 131.

"To determine whether *Heck* applies to an alleged malicious prosecution, the Second Circuit requires the Court to 'separately analyze the charges claimed to have been maliciously prosecuted.'" *Johnson v. New York City*, 2013 WL 950870, at *1 (S.D.N.Y. Mar. 7, 2013) (quoting *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991)), *aff'd sub nom. Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014) (summary order). Otherwise, "an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses." *Posr*, 944 F.2d at 100; *see Janetka v.*

13

*Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) ("If the dispositive factor is whether, as the district court held, the charge resulting in acquittal arose out of events that occurred on the same occasion as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity." (citation and internal quotation marks omitted)).[11]

For example, in *Janetka*, the Second Circuit found that a malicious prosecution claim could proceed with respect to the plaintiff's charge of resisting arrest, on which he was acquitted, even though he had been convicted of disorderly conduct stemming from the same prosecution. 892 F.2d at 189-90. The district court initially had dismissed the malicious prosecution claim, "reason[ing] that the acquittal was not a favorable termination[] because the charge arose out of events that occurred on the same occasion as the disorderly conduct charge that resulted in a conviction." *Id.* at 189 (citation and internal quotation marks omitted). The Second Circuit disagreed, finding that the plaintiff had been "charged with two distinct offenses involving distinct allegations." *Id.* at 190. More specifically, the court explained, "[t]he disorderly conduct charge involved [the plaintiff]'s actions directed at [an] unidentified [H]ispanic man," whereas "the resisting arrest charge involved [the plaintiff's] actions directed at the officers' attempts to arrest him." *Id.* Moreover, the court observed, "[t]he elements of each charge [we]re different," and "neither charge [wa]s a lesser included offense of the other." *Id.*

---

[11] Although *Posr* and *Janetka* predate *Heck*, they analyze the favorable termination requirement of a malicious prosecution claim, which the Second Circuit has held "is coextensive with" the *Heck* bar. *See Poventud*, 750 F.3d at 131.

Likewise, Ricks was charged with two distinct offenses: robbery and possession of stolen property, and those offenses involved distinct allegations.  The robbery charge was based on the allegation—later proven to be false—that Ricks helped plan and execute the robbery of Rent-A-Center's funds from Degraffenried.  The possession of stolen property charge, on the other hand, was based on the allegation that Rent-A-Center's money ended up in a vehicle that Ricks was transported in.  Finally, the two crimes are quite different, and possession of stolen property is not a lesser included offense of robbery.[12]

What is more, "[t]o hold that an acquittal does not constitute a favorable termination would be particularly inappropriate in this case, where the charge for which [Ricks] was acquitted was more serious than the one for which he was convicted."  See Janetka, 892 F.2d at 190.  As Ricks observes, "robbery in the first degree [is] a violent class B felony punishable by up to 25 years," whereas "possession of stolen property in the third degree . . . is a non[-]violent class D felony, punishable by up to 7 years."  Docket Item 48 at 31; see N.Y. Penal Law §§ 70.00, 70.02, 160.15, 165.50.  Indeed, Ricks explicitly "seek[s] compensation for damages" only "for the more than six years he

---

[12] When "two statutes each require proof of a fact that the other does not, then there are two offenses," and one is not the lesser included offense of the other. *Aparicio v. Artuz*, 269 F.3d 78, 97 (2d Cir. 2001) (citation and internal quotation marks omitted).  "The elements of robbery in the first degree are: (1) forcible stealing of property; and (2) 'in the course of the commission of the crime or immediate flight therefrom, [the defendant] . . . [d]isplays what appears to be a [firearm].'"  *Id.* (quoting N.Y. Penal Law § 160.15(4)).  Possession of stolen property in the third degree has an entirely different set of elements.  *See* N.Y. Penal Law § 165.50 ("A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars.").

spent incarcerated on the robbery charge, in excess of the maximum sentence for a possession of stolen property charge." See Docket Item 48 at 29.

For all those reasons, this Court finds that *Heck* does not bar Ricks's malicious prosecution claim related to his robbery conviction.

### C. Due Process

Ricks also alleges violations of his right to due process. Dates and Lauber argue that the Court "should dismiss the plaintiff's remaining claims for prolonged detention and denial of his right to a fair trial based on evidence fabrication and evidence suppression." Docket Item 49 at 4. If Ricks "were to succeed" on those claims, they say, "the integrity of the entire prosecution will necessarily be impugned." *Id.* This Court disagrees.

As with the charges themselves, the evidence that Ricks claims was fabricated is different for the two convictions. For example, a jury could find that the defendants fabricated evidence related to the robbery—which turned out to have been staged—but that Ricks nonetheless ended up knowingly possessing the stolen money. Thus, success on Rick's section 1983 claims with respect to his robbery conviction would "not demonstrate the invalidity of any outstanding criminal judgment against [him]." See *Heck*, 512 U.S. at 487 (emphasis omitted).

Moreover, as Ricks observes and as noted above, he seeks damages only for the time he spent in prison in excess of the maximum sentence on his stolen property conviction. See Docket Item 48 at 29. Seeking damages for that period of time does not run afoul of *Heck*. See *Poventud*, 750 F.3d at 137 (allowing claim for *Brady* violation to proceed where the plaintiff's "complaint s[ought] damages for his time in

prison[] but exclude[d] the time that he served pursuant to his unchallenged 2006 guilty plea").

Thus, Ricks's claim for violations of his right to due process that led to his robbery conviction and for damages stemming from the time he spent in prison beyond the maximum on the stolen property count may proceed.

### III.    COUNT THREE – ATTORNEY'S FEES

Count three alleges that Ricks is entitled to attorney's fees and costs under 42 U.S.C. § 1988.  Docket Item 1 at ¶¶ 164-65.  Lauber and Dates argue that this count "should be dismissed because a claim for costs including attorney's fees is a potential form of relief, not a separate cause of action."  Docket Item 46 at ¶ 40 (citing *Forcucci v. Bd. of Educ. of Hamburg Cent. Sch. Dist.*, 2016 WL 4160200, at *4 (W.D.N.Y. Aug. 5, 2016)).  This Court agrees.  See *Forcucci*, 2016 WL 4160200, at *4 (explaining that "requests for attorney's fees pursuant to 42 U.S.C. § 1988" are "requests for relief" and "not substantive claims"); *Jaffe v. Capital One Bank*, 2010 WL 691639, at *9-10 (S.D.N.Y. Mar. 1, 2010) (dismissing claims for attorney's fees because they were "not causes of action" but rather a "potential forms of relief").  Accordingly, the third cause of action is dismissed, and the claim for attorney's fees and costs is deemed a request for relief.

## **CONCLUSION**

For all those reasons, Lauber and Dates's motion for judgment on the pleadings, Docket Item 46, is GRANTED IN PART and DENIED IN PART.  More specifically, the motion is granted as to Ricks's malicious prosecution and due process claims related to his stolen property conviction but denied as to those claims with respect to his robbery conviction.  The motion also is granted as to count three (attorney's fees), and the separate claim for attorney's fees and costs is deemed to be part of Ricks's request for relief on his claims that survive.


SO ORDERED.

Dated:  September 30, 2024
            Buffalo, New York


 /s/ Lawrence J. Vilardo
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE